IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) NO. 05-10012 |
| | ) |
| JASON MALONE, | ) |
| | ) |
| Defendant. | ) |

**MOTION TO SUPPRESS**
**(Incorporating Memorandum of Law)**

NOW COMES the defendant, JASON MALONE, by Karl W. Bryning, Assistant Federal Defender, and for his motion to suppress states as follows:

FACTS

Except where noted, the following facts are taken from the reports of the officers involved:

1. On January 10, 2005 complainant Officer Loren Marion III of the Peoria Police Department requested and received a search warrant for the premises of 4105 N. Brookdale, Apartment 2C3 and the person of Jason D. Malone.

2. On January 14, 2005 Peoria Police officers entered 4105 N. Brookdale, Apartment C23 where Jason Malone and his girlfriend Davida Vogel were located in the bedroom lying on the bed.

3. Ms. Vogel was ordered off the bed and secured by Officer Moore. Officer Batterham secured Mr. Malone while Malone was on the bed.

4. When Officer Wilson entered the bedroom "Mr. Malone was found laying on the

bed face down with his boxer shorts pulled down, exposing his buttocks."

5. According to Officer Batterham, Officer Moore asked whether anyone had checked Mr. Malone's mouth, Mr. Malone laid back on the bed faced down and Moore ordered Malone to spit out whatever was in his mouth because he appeared to be chewing.

6. Officer Wilson placed a "Tazer" electrical device against Mr. Malone's bare left scapula and, "fearing Malone was going to destroy further evidence", fired an electrical shock into Mr. Malone. The electrical shock caused Mr. Malone to expel a substance, which field tested positive for cocaine, mixed with chewed up plastic baggies, saliva and blood and was so sever that Mr. Malone lost control of his bowels and "defecated in his boxer shorts".

7. According to Officer Wilson "Later, Officer Lawrence allowed Mr. Malone to wash his mouth out and clean himself up."

## GROUNDS FOR SUPPRESSION

8. Police infliction of an electrical shock powerful enough to cause Mr. Malone to convulse and involuntarily defecate, in order to search for evidence within his body, constituted an unreasonable search and violated his protection against unreasonable search under the Fourth Amendment to the United State's Constitution.

9. Police infliction of an electrical shock powerful enough to cause Mr. Malone to invlountarily defecate threatened his safety and health and unconstitutionally intruded upon his dignitary interest in personal privacy and bodily integrity

10. The Fourth Amendment protects individuals against unreasonable searches. *Ohio v. Robinette*, 519 U.S. 33,39, 117 S.Ct. 417, 136 L.Ed.2d. 347 (1996) The touchstone of the Fourth Amendment is reasonableness. In determining whether a search is reasonable, and thus

comports with the Fourth Amendment, this court must weigh a variety of factors to determine whether society's interest in conducting the search outweighs the individual's interest in privacy and security. *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985); *Kraushaar v. Flanigan*, 45 F3d 1040, 1045 (7th Cir. 1995)

11.     The Fourth Amendment protects against intrusions to the "individual's dignitary interests in personal privacy and bodily integrity" in addition to damage to the "individual's sense of personal privacy and security", regardless of whether the intrusion "injures the physical person of the individual." *United States v. Husband* 266 F.3d 626 (7th Cir. 2000) (reversed and remanded where anesthetic administered to defendant and drugs removed from mouth in execution of search warrant). citing *Winston* at 761-762

12.     Where the challenged search involves a physical intrusion, privacy concerns considered in determining reasonableness of the search for purposes of the Fourth Amendment are accompanied by the individual's fundamental interest in maintaining bodily integrity and control. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.ed.2d 908 (1966)

13.     A compelled medical procedure, coupled with an invasive search of a person's body cavity, is a significant intrusion upon and individual's dignitary and privacy interests, and whenever possible, should be preceded by a neutral evaluation of the manner in which the search is to be executed. When it is possible to obtain a search warrant specifically authorizing a compelled medical procedure the State's failure to obtain such a warrant can be an important factor in considering the States' interest in the procedure and in determining the reasonableness of the search. *Husband* at 634

14.     In *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the

Court suppressed evidence obtained when police broke into a suspect's house and, after witnessing the suspect swallow two capsules, initially attempted to forcibly extract the capsules from his mouth and then had his stomach pumped in order to recover them. In holding that this was conduct that "shocked the conscience" and therefore violated due process guaranties, the Court stated that "[i]llegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents–this course of proceeding by agents of government...are methods too close to the rack and the screw to permit constitutional differentiation."

15. The Court has shifted from a "shocks the conscience" standard under the Due Process Clause to one of "objective reasonableness" under the Fourth Amendment the Court noted in *Sacramento v. Lewis*, 523 U.S. 833, 850 n. 9, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) that if *Rochin* were considered today, "It would be treated under the Fourth Amendment, albeit with the same result."

16. Under *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.ed.2d 908 (1966), in ruling that a compelled blood test was reasonable during a DUI but noting that "because the Constitution does not forbid the State's minor intrusions into an individual's body under stringently limited circumstances in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.", a balancing test was employed and referred to as "the Schmerber balancing test" in the case of *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). In *Winston,* where the Court determined that the government failed to show it was reasonable to search for evidence by compelled surgical procedure to remove bullet from beneath skin of robbery suspect, the factors considered were: (1) "the extent to which

the procedure may threaten the safety or health of the individual"; (2) "the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity"; (3) "the community's interest in fairly and accurately determining guilt or innocence." *Winston* at 761-762.

17. The Supreme Court has recognized that penetrating a person's skin infringes on a person's reasonable expectation of privacy. "In light of our society's concern for the security of one's person, ... it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989).

18. The physical intrusion into Mr. Malone's body and forcible extraction of his mouth's contents by agents of government without a warrant authorizing such a procedure made the search of Mr. Malone's mouth unlawful. "Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned .... The importance of informed, detached and deliberate determinations of whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Schmerber v. California*, at 770 (1966).

19. The mere fact that the police had obtained a warrant to search Mr. Malone's person did not render reasonable their actions in administering an electrical shock to Mr. Malone in order to recover evidence. *See United States v. Nelson*, 36 F.3d 758 (8th Cir. 1994)(finding "no 'objectively reasonable basis for the officers' mistaken belief' that the authorization contained in the warrant to search the defendant's person extended to the endoscopy used to recover a packet of drugs from the defendant's stomach). In this case, the officers could not reasonably believe

that the warrant for the search of the defendant's person allowed them to commit a "physical intrusion, penetrating beneath the skin" of the defendant in order to search his mouth.

WHEREFORE, defendant respectfully requests that this Honorable Court suppress all evidence obtained as a result of the illegal search of Mr. Malone's mouth after he was subjected to an unlawful electrical shock.

        Respectfully submitted,

        Richard H. Parsons
        Federal Public Defender


BY: _____
        s/ Karl W. Bryning

        Karl W. Bryning
        Assistant Federal Public Defender
        Attorney for Defendant
        401 Main Street, Suite 1500
        Peoria, Illinois 61602
        Phone: 309/671-7891
        FAX: 309/671-7898
        Email: karl_bryning@fd.org

CERTIFICATE OF SERVICE

       I hereby certify that on April 13, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Mr. Bradley Murphy, Assistant United States Attorney, One Technology Plaza, 211 Fulton Street, Suite 400, Peoria, Illinois 61602.

                              s/ Karl W. Bryning

                              Karl W. Bryning
                              Assistant Federal Public Defender
                              Attorney for Defendant
                              401 Main Street, Suite 1500
                              Peoria, Illinois 61602
                              Phone: 309/671-7891
                              FAX: 309/671-7898
                              Email: karl_bryning@fd.org